UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **RYAN CHAPMAN,** *Plaintiff,* v. **BIBOON, LLC, DANIEL KOETTING,** *and* **ROCKHILL CONSULTING GROUP, LLC,** *Defendants.* | Case Number:   8:23-cv-28 **JURY TRIAL DEMANDED** |

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Ryan Chapman ("Mr. Chapman"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Biboon, LLC ("Biboon"), Rockhill Consulting Group, LLC ("Rockhill"), and Daniel Koetting ("Koetting") (collectively, the "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Chapman against the Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.* ("FCCPA") the Florida Civil Remedies for Criminal Practices Act, § 772.101, Florida Statutes, *et seq.* ("CRCPA"), and for unjust enrichment.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant conduct occurred in Hillsborough County, Florida.

3. This Court has supplemental jurisdiction over Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367, as such claims are part of the same case or controversy as Plaintiff's RICO claims.

4. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Florida Statutes.

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

6. Mr. Chapman is a natural person residing in Hillsborough County, Florida.

7. Mr. Chapman is a *Consumer* as defined by the FCCPA, § 559.55(8), Florida Statutes.

8. Biboon is chartered pursuant to the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized sovereign Indian nation (the "LDF Tribe").

9. Biboon claims to operate as an "arm of the LDF Tribe."

10. Biboon can be served at the LDF Tribal Office, located at 418 Old Abe Rd, Lac Du Flambeau, WI 54538.

11. Rockhill is a Delaware limited liability company with a primary business address of 530 B St., Suite 2300, San Diego, CA 92101.

12. Rockhill's Delaware registered agent is A Registered Agent, Inc., 8 The Green, Suite A, Dover, DE 19901.

13. Koetting is a natural person and the CEO of Rockhill.

14. Koetting lives in or around La Jolla, California.

15. Koetting's business address is **530 B St., Suite 2300, San Diego, CA 92101.**

## FACTUAL ALLEGATIONS

### Bridge Lending Solutions Makes Loan to Mr. Chapman

16. On or about March 21, 2022, Mr. Chapman obtained a loan (the "Loan") from www.BridgeLendingSolutions.com ("Bridge Lending Solutions"). **SEE PLAINTIFF'S EXHIBIT A.**

17. The Loan was in the principal amount of $450.

18. The Loan was assigned loan number 1039942.

19. Mr. Chapman took the Loan out from his home in Florida.

20. Bridge Lending Solutions wired the loan proceeds to Mr. Chapman's checking account maintained in Florida.

21. Mr. Chapman received collection correspondence at his home in Florida and had funds withdrawn from his Florida checking account.

22. The transaction therefore occurred in Florida and is subject to Florida law. *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).

23. § 687.071(3), Florida Statutes renders the issuing of credit at an annual interest rate greater than 25% a criminal offense.

24. § 687.071(7), Florida Statutes renders any such loan, and logically any debt stemming from such extension of credit, void and unenforceable.

25. The Loan charged a stated Annual Percentage Rate ("APR") of 720.66%.

26. The Loan was therefore void *ab initio* pursuant to Florida law.

27. The Loan charged interest at more than double Florida's criminal rate of 25%, and therefore the Loan, and any balance arising therefrom, constitutes an "unlawful debt" per § 772.102(2), Florida Statutes and 18 U.S.C. § 1961(6).

28. The Loan required Mr. Chapman to make bi-weekly payments of up to $157.50, with payments beginning April 8, 2022 and ending February 24, 2023.

29. Mr. Chapman made 11 payments towards the Loan, totaling $1,490.75.

30. Despite this, Bridge Lending Solutions alleged a remaining balance of $570.

31. Mr. Chapman utilized the loan proceeds for personal and household purchases.

32. The Loan balance thus meets the definition of a debt under the FCCPA, Fla. Stat. § 559.55(6).

33. Bridge Lending sought to collect this balance via emails to Mr. Chapman and via credit reporting. **SEE PLAINTIFF'S EXHIBIT B.**

### The Defendants' Lending Enterprise

34. Biboon is a subsidiary of LDF Holdings, LLC, an economic arm of the LDF Tribe.

35. LDF Holdings acts as the parent company to dozens of tribal lending entities ("**TLEs**"), purportedly chartered under the laws of the LDF Tribe.

36. The only business Biboon conducts is making small-dollar loans to consumers under the fictitious name via its website: www.bridgelendingsolutions.com.

37. Biboon claims to act as an arm of the LDF Tribe.

38. As an arm of the tribe, Biboon claims tribal sovereign immunity from criminal and civil prosecution regarding its lending practices, which constitute felonies in many states, including Florida.

39. However, the idea that Biboon is a legitimate "arm-of-the-tribe" is a farce.

40. Biboon contracts with a series of non-tribal "service providers," including Rockhill.

41. These service providers perform loan portfolio management, collection, call center operations, credit reporting, and more on behalf of Bridge Lending Solutions.

42. In exchange for chartering Biboon, the LDF Tribe is paid a small percentage of revenues, on information and belief, around 2%.

43. Such sham arrangements are known as "rent-a-tribe" agreements.

44. Rockhill is a non-tribal company with offices in downtown San Diego, California.

45. Rockhill is registered with the California Secretary of State as actively doing business in California.

46. Rockhill is owned by Koetting.

47. The LDF Tribe has little control over Koetting's California operations and the financial relationship is essentially *pro forma* – the Tribe is paid a small percentage of revenue to publicly claim ownership.

48. Records show the server for BridgeLendingSolutions.com is not located on the LDF Tribe's reservation, or even in the United States.

49. The website's IP address is 142.4.194.30, which corresponds to a physical location in Montreal, Quebec, Canada. **SEE PLAINTIFF'S EXHIBIT C.**

50. Koetting and Rockhill use their own underwriting algorithms and risk scoring systems when determining if, and how much, they should lend to consumers.

51. None, or virtually none, of Bridge Lending Solutions' customers find bridgelendingsolutions.com on their own.

52. Nearly all new customers are obtained by Koetting and Rockhill purchasing leads from online payday loan lead generators.

53. Once the leads are purchased, Koetting and Rockhill utilize sophisticated data-driven analytics of a consumer's ability and willingness to repay usurious loans, primarily using data obtained on the lead from specialty credit reporting agencies ("CRAs") like Clarity Systems, FactorTrust, and ChexSystems.

54. If the lead is deemed a good match by Koetting and Rockhill's analytics, Bridge Lending Solutions' loans are advised to the consumer, touting "quick and easy" cash wired "the next day" into the consumer's checking account.

55. Koetting and Rockhill's marketing makes no mention the loans carry interest rates more than 30 times the legal maximum under Florida law.

56. If the consumer applies for a Bridge Lending Solutions loan, Rockill, or other related service providers, perform all the loan underwriting and evaluation metrics.

57. Koetting is directly involved in the management of Rockhill and was the one responsible for implementing the "rent-a-tribe" scheme with the LDF Tribe.

58. Koetting and Rockhill receive a substantial share of profits from the collection of the loans issued through Bridge Lending Solutions – including Plaintiff's.

59. LDF Holdings, in exchange for creating a guise of tribal control and ownership, also receives a share of profits from the collection of the loans issued through Bridge Lending Solutions – including Plaintiff's.

**Koetting and Rockhill's History of Online Payday Lending**

60. Koetting, together with his brother, Mark Koetting (jointly, "Koetting Brothers"), have been involved in online payday lending for more than a decade.

Page **7** of **23**

61. Around mid-2012, the Koetting Brothers struck a deal with the Big Lagoon Rancheria, a federally-recognized Indian tribe of Yurok and Tolowa Indians ("Big Lagoon Tribe"). The Big Lagoon Tribe had a total of 17 enrolled members and had few economic prospects at the time.

62. Headquarters for the Big Lagoon Tribe are in Arcata, California.

63. In exchange for a small percentage of revenue – roughly 2% – the Big Lagoon Tribe agreed to claim ownership of two new online payday lending businesses – Green Gate Services and Clear Loan Solutions.

64. Shortly thereafter, the Koetting Brothers arranged for legal counsel to draft applicable "tribal" law in which the Big Lagoon Tribe authorized consumer lending businesses, culminating in the Big Lagoon Tribe passing Resolution No. 2012-801 on July 27, 2012.

65. Another resolution was passed on August 30, 2013, creating "Green Gate Services."

66. Thus, while the Big Lagoon Tribe would appear to be the operator of the lending businesses, the Koetting Brothers were the real, beneficial owners of the businesses.

67. Such arrangements are often referred to as "rent-a-tribe" agreements.

68. In "rent-a-tribe" schemes, non-tribal payday lenders like the Koetting Brothers attempt to circumvent state and federal laws that prohibit usurious loans from being issued.

69. The Koetting Brothers do this by issuing loans in the name of a Native American TLE(s) that purport to be shielded from state and federal law via tribal sovereign immunity.

70. The TLE, however, is a mere "front" for an illegal lending scheme; all substantive aspects of the payday lending operation (*e.g.*, financial backing, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections) are performed by individuals and entities that are unaffiliated with the Native American tribe, i.e., the Koetting Brothers.

71. In exchange for "renting" its sovereign immunity to the individuals and entities running the payday lending scheme, the cooperating Native American tribe receives an insignificant fraction of the revenues generated; while the percentage varies from scheme-to-scheme, the number is almost always in the low single digits.

72. According to a sworn statement made by Shawna Neyra, a member of the Big Lagoon Tribe's business council, "the Tribe hired a consultant to assist the Tribe in exploring, and ultimately entering into, the (online payday lending) industry." *Declaration of Shawna Neyra*, October 11, 2018, re: *Gilliam et. al vs. Dan Koetting et. al*, case 3:18-cv-00473-REP, E.D. Vir.

73. The "consultants" were the Koetting Brothers and their related companies, Rockhill and Redondo Management LLC.

74. Rockhill owned Green Gate; the rent-a-tribe agreement between Rockhill and the Big Lagoon Tribe was signed by Dan Koetting.

75. Redondo owned a slightly different payday lending website, Clear Loan Solutions.

76. Mark Koetting signed the relevant rent-a-tribe documents on behalf of Redondo.

77. The agreements indicated that Redondo and Rockhill were "responsible for acquiring capital for the loans, contracting with vendors and service providers, ensuring regulatory compliance, preparing financial statements, and managing respondents' banking relationships.

78. According to the agreements, the Big Lagoon Tribe agreed to pay Redondo and Rockhill a "salary" and "performance fee." *Green Gate Servs. v. Koetting*, A158316 (Cal. Ct. App. Dec. 4, 2020)

79. In or around October 2017, the Big Lagoon Tribe essentially fired the Koetting Brothers and their related companies.

80. The Big Lagoon Tribe accused the Koetting Brothers of shorting the tribe even the *2 cents on the dollar* the Koetting Brothers were supposed to be paying, of hiding revenues from the tribe, and other financial malfeasance.

81. Rather than attempt to mend its relationship with the Big Lagoon Tribe and repay the money owed, The Koetting Brothers instead switched to the LDF Tribe.

82. The Koetting Brothers took the existing customers of Green Gate Services with them to their "new" lending business, now called Bridge Lending Services.

83. Emails sent in the name of Bridge Lending Services informed Green Gate Services customers their loans were now "serviced by" Bridge Lending Solutions and that customers should pay Biboon, not Green Gate Services.

84. The similarities between the websites of the "new" TLE, Biboon/Bridge Lending Solutions, and the old TLE, Green Gate Services, are numerous and stark.

85. Bridge Lending Solutions website is headlined "Flexible Installment Loans… the easy way!"

86. Bridge Lending Solutions website (www.bridgelendingsolutions.com) states, as of May 26, 2022:

> Bridge Lending Solutions is a consumer lending company specializing in online installment loans. Unlike many other lending companies, we offer flexible payment options that empower our customers to better control their finances. As a direct lender, we provide immediate and secure service with no middle-men, and fast, friendly U.S.-based representatives. We value our customers and understand that customer loyalty is earned. Apply now and experience the difference.
>
> We are a flexible installment company and we specialize in small-dollar loans. We provide speedy service in a friendly and efficient manner. We are secure, discreet, and offer assistance in both English and Español. Our 24-hour on-line convenience offers personalized self-service options. Consider us your emergency money!
>
> It's as EASY as 1, 2, 3... You are moments away from receiving your money! Using any internet enabled PC or smart device, please click the link below.

87. This coincides with Green Gate Services website (www.greengateservices.com), archived March 31, 2016, which also bore the identical headline, "Flexible Installment Loans... the EASY way!" followed by text *identical* to

that appearing on the Bridge Lending Solutions website (save for the name of the lender):

> Green Gate Services is a consumer lending company specializing in online installment loans. Unlike many other lending companies, we offer flexible payment options that empower our customers to better control their finances. As a direct lender, we provide immediate and secure service with no credit checks, no middle-men, and fast, friendly U.S.-based representatives. We value our customers and understand that customer loyalty is earned. Apply now and experience the difference.
>
> We are a flexible installment company and we specialize in small-dollar loans. We provide speedy service in a friendly and efficient manner. We are secure, discreet, and offer assistance in both English and Español. Our 24-hour on-line convenience offers personalized self-service options. Consider us your emergency money!
>
> It's as EASY as 1, 2, 3... You are moments away from receiving your money! Using any internet enabled PC or smart device, please click the link below.

88. The LDF Tribe and the Big Lagoon Tribe have nothing to do with one another, and share no common history, language, or trade treaties.

89. The Koetting brothers merely shifted their online lending from the Big Lagoon Tribe to the LDF Tribe.

90. Koetting and Rockhill at all times remained the parties with the predominate economic interest in their online loans, including those issued through Bridge Lending Solutions.

91. The Defendants collected the Loan through ACH withdrawals and, on information and belief, emailed statements to Mr. Chapman.

92. The Defendants' conduct caused Mr. Chapman to repay amounts on a void loan.

93. The Defendants' conduct further caused Mr. Chapman to suffer from extreme emotional distress upon learning that the loan he had entered into charged interest at more than 30 times Florida's maximum rate.

94. Mr. Chapman has hired the aforementioned law firm to represent his in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF 18 U.S.C § 1962(c)
## All Defendants

95. Mr. Chapman incorporates Paragraphs 1 – 94 as if fully restated herein.

96. The Defendants, through their joint operation and control of Bridge Lending Solutions, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

97. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

98. The Defendants' participation in the enterprise violated 18 U.S.C. § 1962(c) and caused Plaintiff to repay amounts on his unlawful loan.

99. The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Bridge Lending Solutions, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Mr. Chapman's Florida bank account.

100. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $4,472.25, reasonable attorney's fees, and costs.

## COUNT II
### VIOLATIONS OF 18 U.S.C § 1962(d)
### All Defendants

101. Mr. Chapman incorporates Paragraphs 1 – 94 as if fully restated herein.

102. The Defendants violated **18 U.S.C § 1962(d) by** conspiring with each other, and other persons, to issue and collect unlawful debts through Bridge Lending Solutions.

103. The Defendants each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued credit to Mr. Chapman; (b) initiated ACH deposits and withdrawals to Mr. Chapman's bank accounts (c) attempted collection of the loan through emails and phone calls to Mr. Chapman; and/or (d) claimed ownership of Bridge Lending Solutions to provide a guise of issuance from a bank.

104. The Defendants utilized the internet, telephone and mail to reach across state lines in furtherance of their conspiracy.

105. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $4,472.25, reasonable attorney's fees, and costs.

## COUNT III
## **VIOLATIONS OF THE CRCPA – § 772.103(3), FLORIDA STATUTES**

106. Mr. Chapman adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

107. The Defendants, through their joint operation and control of Bridge Lending Solutions, constitute an "enterprise" under the CRCPA, § 772.102(3), Florida Statutes.

108. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

109. The Defendants' participation in the enterprise violated § 772.102(3), Florida Statutes and caused Plaintiff to repay amounts on his unlawful loan.

110. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $4,472.25, reasonable attorney's fees, and costs.

## COUNT IV
## **VIOLATIONS OF THE CRCPA – § 772.103(4), FLORIDA STATUTES**

111. Mr. Chapman adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

112. The Defendants violated § 772.103(4), Florida Statutes by conspiring with each other, and other persons, to issue and collect unlawful debts through Bridge Lending Solutions.

113. The Defendants each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued the Loan to Mr. Chapman; (b) attempted collection of the Loan through ACH withdrawals from Mr. Chapman's checking account; and/or (c) claimed ownership of Bridge Lending Solutions to provide a guise of issuance from a tribal lender.

114. The Defendants each knew that the purpose of the enterprise was to issue and collect unlawful debts.

115. The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through MakwaFinance.com.

116. Accordingly, the Defendants are jointly and severally liable to Mr. Chapman for treble damages totaling at least $4,472.25, reasonable attorney's fees, and costs.

## COUNT V
## UNJUST ENRICHMENT

117. Mr. Chapman incorporates Paragraphs 1 – 94 as if fully restated herein.

118. The Loan issued by Bridge Lending Solutions to Plaintiff charged an interest rate which rendered it void and unenforceable in Florida.

119. Plaintiff conferred a benefit on Defendants when he made payments on the Loan, as he had no obligation to do so and, therefore, Defendants were owed nothing.

120. Defendants knew, or should have known, of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loan such that it would be inequitable for Defendants to retain the money they received.

121. Accordingly, Plaintiff seeks to recover from Defendants all amounts repaid on his Bridge Lending Solution account.

## COUNT VI
## VIOLATIONS OF THE FCCPA
## § 559.72(9), Florida Statutes

122. Mr. Chapman incorporates Paragraphs 1 – 94 as if fully restated herein.

123. The Defendants violated **§ 559.72(9)**, **Florida Statutes**, when they attempted to collect – and did collect – a loan made to Mr. Chapman by Bridge Lending Solutions, therein asserting the legal right to collect such loan.

124. The loan was illegitimate and unenforceable due to the application of interest rates in excess of 700% percent annually on the principal amount of the loan, in violation of § 687.071, Florida Statutes, and the Defendants knew, or should have known, the loans was unenforceable in Florida.

125. Accordingly, the Defendants are liable to Mr. Chapman for actual damages, statutory damages of up to $1,000.00, reasonable attorneys' fees, and costs.

126. Mr. Chapman also seeks an injunction against the Defendants, prohibiting them from any further collection of any unlawful debt from Mr. Chapman.

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Chapman respectfully requests that this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a. An award of statutory, actual and treble damages as pled herein;

b. An award of attorneys' fees, litigation expenses, and costs of suit;

c. Injunctive relief prohibiting the Defendants from further collection of the Loan; and,

d. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Chapman hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 5, 2023, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
BGeiger@SeraphLegal.Com
*Counsel for Plaintiff*

**EXHIBIT LIST**

A    Plaintiff's Consumer Installment Loan Agreement, Excerpt
B    Mr. Chapman's Clarity Consumer Disclosure, October 25, 2022, Excerpt
C    Bridgelendingsolution.com IP Address